## 6161. JONES, *alias* EDWARDS, *v.* THE STATE.

In a prosecution for a violation of the "labor-contract act" (Penal Code, § 715), the burden rests upon the State to show that there was no sufficient reason for the breach of the contract on the part of the defendant, or, in default thereof, that there was no good and sufficient reason why the money advanced on the strength of the contract was not returned. "Without this proof the State's case is incomplete, because the prosecution has not created the evidentiary presumption necessary to rebut the presumption of innocence. Presumably the accused had good and sufficient cause." *Thorn* v. *State*, 13 *Ga. App.* 10 (78 S. E. 853). See also *Lewis* v. *State*, ante, 405 (83 S. E. 439).

DECIDED JANUARY 20, 1915.

Accusation of cheating and swindling; from city court of Millen—Judge Thomas L. Hill. October 29, 1914.

*G. C. Dekle,* for plaintiff in error.    *W. Woodrum, solicitor,* contra.

WADE, J. Fannie Jones, alias Fannie Edwards, was convicted under an accusation charging her with the violation of the "labor-contract law." She excepts to the order overruling her motion for a new trial. The entire evidence adduced at the trial was as follows: J. W. Jones, sworn for the State, testified: "The defendant contracted to work for me as a cook in my kitchen and dining-room, in my dwelling at Thrift, Ga., in this county. She got $3

from me on the faith of this contract. I advanced the money to her on the 3d day of April, 1914. She was to begin work for me on the following day, April 4, 1914, and was to work until May 4, 1914. She was to receive for this service the sum of $5. She did not work any after she got the money. If there was any reason why she did not perform her contract, I did not know it. If she had any reason for not doing the work, I do not know what it was—I do not know of any that she had. This was in Jenkins county, Ga. [On cross-examination:] The first time that I saw Fannie after she got the money was when the sheriff brought her to my place. That was the first time that she told me about any row that she had with the man who lived with her in my yard. At the time the contract was made we had an agreement where the work was to be done. It is true that she had been working with me before, but I had the forethought to put her under another contract before letting her have the money. She got the money on Friday and was to start working on the next day. Of course she was to continue working, but under a new contract. I do not know that I always put my hands under a new contract when I advance them anything. Under that contract she was to do any and all work that she might be directed to do around the house by my wife or myself. Under the contract she was to cook; she was also to make up beds, sweep yards, go after groceries, milk cows, and, as I said, do any other work she was called upon to do around the premises. I expected her to do any of these things under her contract. She did not work any on it. She did not work Saturday on it. It is true she was to get off to go to church Sunday, but she got off before then, as she did not work any Saturday. I do not know anything about the row she had at church on Sunday. I was not at home on that day. As I said before, the first time she told me about that was when the sheriff brought her to my house. It is not true that she offered me the money but that I refused it because she would not pay an old account of hers that I had bought from Mr. Wiggins. This is not so. I am positive she was to work with me from April 4 until May 4. I do not remember the day of the week that May 4 came on, but know she was to work until that time. She has never done any of the work, nor has she ever returned or offered to return the $3 she obtained from me upon the faith of the contract." The defendant made the following statement: "As to the

contract, I did not make any contract with the gentleman. I had been working there several months, and I went to him on the 3d of April, and told him I wanted $3 to get me some clothes for Easter Sunday, and he let me have it. He is mistaken about me not working for him Saturday, for I did. I lived in his back yard, and that Sunday the man who lived with me there got after me at church, with a pistol and knife, and would have killed me if some of them had not stopped him, and said if I went back there he would get me; and I was afraid of him, and that is the reason that I did not go back. Besides, Dr. Jones was not at home that Sunday, and, after I went over a few miles to my people, I decided I had better stay away from that man and try to make the money and send it to Dr. Jones; and so in a few days he had me arrested before I had time do anything, and that is all I know about it."

As ruled in the *Thorn* case, supra, and also in *Lewis* v. *State,* supra, the burden rests upon the State to show that there was no good and sufficient reason for the breach of a labor contract on the part of the defendant, or, in default thereof, that there was no good and sufficient reason why the money advanced on the strength of the contract was not returned. The sole witness for the State in this case testified as follows: "If there was any reason why she did not perform the contract, I did not know it. If she had any reason for not doing the work, I did not know what it was—I did not know of any she had." He further said: "She has never done any of the work, nor has she ever returned or offered to return the $3 she obtained from me on the faith of the contract." From this it is apparent that the burden resting upon the State was not carried, since it does not affirmatively appear from the evidence that there was no good and sufficient reason for the breach of the contract by the defendant, or that there was no good and sufficient reason for her failure to return the money advanced upon the strength of the contract. *Judgment reversed.*